Joseph Hamilton, a justice of the peace, came to the house of his brother, the other defendant, and sent for Nathaniel Pope. After he arrived, the two Hamiltons took a purse and put $12, together with two quarter-pound weights into it, and gave it to a female slave belonging to Noble Hamilton, one of the defendants. They directed her to go to a certain place on the river, not far distant. She went to the place, the *Page 350 
defendant and Pope lying in ambush not far off. The plaintiff came to her a short time afterwards. As soon as he came up, a negro fellow, who was also in ambush, caught him, and called for the others, who came to his assistance. Joseph Hamilton arrived first; and the purse, with the money and weights in it, were on the ground. He picked it up and struck the plaintiff with it, and injured him considerably. Pope, the witness, prevented Hamilton from any further abuse at that time. They then tied him and kept him in custody two days and nights; part of the time tied, and the balance of the time under guard. The magistrate, Joseph Hamilton, issued a warrant, and Pope executed it the morning after he was taken. They then proposed a compromise, and took a conveyance for his land and all his personal property, stated to be worth between one and two hundred pounds.
The plaintiff was poor; had a wife and a small family of children. While he was in custody, they threatened to strip and whip him (472) unless he would comply with their demands by conveying his property to Noble Hamilton. Upon the conveyance being made, the warrant was destroyed and the plaintiff discharged. When Joseph Hamilton first came, he interrogated plaintiff as to his business. He said the servant owed him a small sum of money, which he had come to get.
The witness Pope, who was deputed by the defendant, Joseph Hamilton, to act as a constable on this occasion, proposed to return the warrant before the said Joseph; but he refused to take cognizance of it. Two justices of the peace lived within a short distance of the place where the plaintiff was held in custody, and one justice of the peace came to the place while he was so in custody; but the plaintiff was not carried before any justice of the peace.
The defendants were proved to be wealthy men. On the argument of the cause the defendant's counsel argued in mitigation of damages that the plaintiff was guilty of a felony by receiving the money, etc., put into the bag by the defendants.
In charging the jury, the court held that it was essential to the commission of a felony that the things taken should be taken without the consent of the owner. But that if the plaintiff had been actually guilty of a felony in receiving the money put into the bag, yet if the jury believed that they, the defendants, had exceeded and abused their authority, they were, nevertheless, liable to the plaintiff, and it was their exclusive province to assess adequate damages. The jury found for the plaintiff, and assessed his damages to £ 400.
The defendant's counsel moved for a new trial, on the ground that the damages were excessive, and that the court misdirected the jury in stating that if the plaintiff had received from the negro the money put into *Page 351 
the bag by the defendants, for the express purpose of being given to the plaintiff, that he was not guilty of felony in receiving it.
The court overruled the motion for a new trial. From which judgment the defendant appealed to the Supreme Court.
A motion for a new trial is moved for on two (473) grounds:
1. Because the presiding judge misdirected the jury in matter of law.
2. Because the jury gave excessive damages.
As to the first, we hold it to be a clear and indisputable rule of the criminal law that it is essential to the commission of larceny that the thing alleged to be taken should appear to have been taken against the will of the owner. Had the plaintiff been found in the actual possession of the money put into the bag for the purpose of being delivered to him by the defendant's slave, it would not have been felony; because the defendants, by their own acts, evidenced their assent to its passing into his possession. But if the plaintiff had been actually guilty of a felony in receiving the money, under the circumstances disclosed in the case, yet, by abusing the authority under which they acted, or pretended to act, the defendants became trespassers, and liable to the plaintiff's action.
As to the second ground, we are of opinion that the correcting power of the court, in cases of verdicts for damages, can only be rightfully exercised where the jury have grossly exceeded some standard pointed out by the law or justice of the case, by which their verdict should be regulated; or where there is just ground to believe that they have acted corruptly.
The application of these rules to the damages assessed by the jury in this case will not warrant us in saying that they are excessive.
Wherefore, we are all of opinion that the motion for a new trial be overruled, on both grounds, and that there be
Judgment for the plaintiff.
NOTE — See, upon the first point, S. v. Jernagan, post, 483, and upon the second point, Young v. Hairston, 14. N.C. 55.
Cited: S. v. Adams, 115 N.C. 782. *Page 352 
(474)